UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JABIL CIRCUIT, INC., et al.,

    Plaintiffs,

v.                                                Case No.: 8:09-CV-1596-T-27EAJ

SPEEDLINE TECHNOLOGIES, INC.,

    Defendant.
_____/

## ORDER

Before the court are Defendant's **Motion to Strike Plaintiffs' Disclosure of Expert Testimony and to Exclude Plaintiffs' Expert Testimony at Trial** (Dkt. 40) and Plaintiffs' **Response** (Dkt. 55). Defendant contends that: 1) Plaintiffs' expert disclosures should be stricken as untimely; 2) Plaintiffs' expert disclosures do not comply with Fed. R. Civ. P. 26; and 3) Plaintiffs' expert testimony is inadmissible under Fed. R. Evid. 702. Upon due consideration, the motion to strike is denied.

**I.    Timeliness**

Defendant asks that Plaintiffs' Fed. R. Civ. P. 26(a)(2) expert disclosures be stricken because they were produced one day late. Plaintiffs concede that they produced the materials one day late, but maintain that the delay was harmless.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." Leathers v. Pfizer, Inc., 233 F.R.D. 687, 697 (N.D. Ga.

2006) (citations omitted).

Although Defendant contends that it was harmed in losing one day to depose the experts, Plaintiffs respond that Defendant could have conducted depositions after receiving the late disclosure but declined to do so.[1] There were eight business days between the August 25 expert disclosure deadline and the September 9 discovery deadline. Plaintiffs' late disclosure precluded Defendant from conducting a deposition on August 26. There is no evidence, however, that Defendant attempted to depose any of the experts between August 27 and September 9.[2] In light of Defendant's failure to do so, Defendant's inability to depose an expert on August 26 was harmless.

Defendant also asks the court to strike Plaintiffs' supplementation of its expert disclosures because Defendant was unable to depose experts after receiving it and Plaintiffs refused to agree to an extension of time to depose experts.

A party must supplement an expert disclosure that is in some material respect incomplete or incorrect. Fed. R. Civ. P. 26(e)(1). The procedure should not be used to cure an expert's inadequate or incomplete preparation or to "produce information in a belated fashion and add to the expert's original opinions." Carrena v. Home Transp., Inc., No. 3:08-cv-1206-J-32JRK, 2010 WL 2293391, at *2 n.6 (M.D. Fla. June 7, 2010) (citation and internal brackets and quotation marks omitted). Supplementation must be completed "by the time the party's pretrial disclosures under

---

[1] Plaintiffs also submit that there was no harm because Defendant received the expert reports as early as 2009 and had many opportunities to depose the experts before the August 25 deadline. Defendant counters that it was not permitted to depose the experts prior to receiving the Rule 26(a)(2)(B) disclosures. See Fed. R. Civ. P. 26(b)(4)(A). Whether Defendant could have deposed the experts before August 26 is moot for the reasons discussed below.

[2] Defendant asserts that the parties reserved three business days during this period for fact witness depositions. Regardless, there is no evidence that Defendant attempted to depose any of Plaintiffs' experts on the remaining available business days.

Rule 26(a)(3) are due," i.e., "at least 30 days before trial" unless the court orders otherwise. Fed. R. Civ. P 26(a)(2)(D), (a)(3)(B), and (e)(2).

Because Defendant received the supplement more than thirty days before trial, it was not untimely.[3] Moreover, Defendant was not prejudiced by the late disclosure of: 1) expert compensation; 2) expert qualifications; and 3) identification and cross-reference of documents relied on in an expert's report (Dkt. 41 Ex. 3). See, e.g., Lozano v. City of Hazleton, 241 F.R.D. 252, 258 (M.D. Pa. 2007). Although the remaining information clarifies the anticipated testimony of six damages witnesses identified in Plaintiffs' expert disclosure, these witnesses were not specially retained in this matter. Consequently, Plaintiffs were not obligated to provide their written reports. See Fed. R. Civ. P. 26(a)(2)(B) (providing for production of written report for a witness "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony"). Because Defendant has shown no reason that Plaintiffs' supplement is inconsistent with Rule 26(e), the supplement will not be stricken.

## II. Compliance With Rule 26

Defendant submits that the expert reports fail to comply with Fed. R. Civ. P. 26 because, among other things, they are conclusory and provide neither the bases for the opinions nor data supporting the opinions.[4]

### a. Germuska Report

Plaintiffs allege that a defect in Defendant's product caused a fire. Michael Germuska, an

---

[3] Defendant does not suggest that the court changed the pretrial disclosure deadline.

[4] Defendant also contends that none of the disclosures contained a statement of the compensation to be paid for the study and testimony in the case. See Fed. R. Civ. P. 26(a)(2)(B)(vi). Plaintiffs concede this omission but correctly point out that the information was provided in the supplement (Dkt. 41 Ex. 3 at 1-2). Consequently, the disclosures will not be stricken on this basis.

electrical engineer, prepared a report regarding the cause of the fire (Dkt. 46 Ex. 1). He concluded that the fire originated when one of two immersion heaters within a rinse tank severely warped and contacted the combustible rinse tank wall, igniting it. Defendant maintains that Germuska provided no explanation as to what caused the immersion heater to severely warp so as to come into contact with the rinse tank wall.

Yet the report clearly states that "[i]f the immersion heaters are 'dry fired', i.e. they are operated without being completely submerged in water, they can warp.... [I]f the immersion heater warp/distortion is severe enough, the heater can contact the tank wall and ignite the combustible tank material" (Id. at 4). Germuska further reasoned that the immersion heaters within the rinse tank "were probably dry-fired, causing one heater to warp enough to contact the tank side wall, and ignite the combustible polypropylene rinse tank" (Id. at 5). Defendant's suggestion that Germuska did not explain what caused the immersion heater to severely warp is without merit.

### b. Moylan Report

William T. Moylan, a senior fire investigator, prepared a report regarding the origin and cause of the fire (Dkt. 46 Ex. 2-3). He concluded that "[t]he fire was caused by a water level drop in the rinse tank, which allowed the immersion heating element to rise above the water level, warp, and impinge upon the polypropylene rinse tank side wall, subsequently causing ignition of the combustible tank material" (Dkt. 46 Ex. 2 at 4). Defendant contends that Moylan failed to explain why the water level dropped in the rinse tank or why the immersion heater's rise above the water level would cause it to immediately and severely warp.

Moylan, however, explained that "the tank had melted from the top down to approximately 5" from the bottom of the tank. A line of demarcation on the remaining tank wall demonstrated that

4

the water level in the tank had dropped to approximately 4-1/2" from the bottom of the tank. The normal water level was determined to be 12"" (Id. at 11). Regardless of the cause of the water level drop, Moylan explained why he concluded that it happened.

As for why the immersion heater would severely warp once out of water, Moylan referred to "[a] caution statement in the ... instruction manual warn[ing] that the immersion heater can warp excessively in the direction of the tank wall or bottom, overheating the polypropylene tank, causing warpage of the tank wall, and introducing the possibility of a fire hazard" (Id. at 4). Defendant emphasizes that the manual indicates the heaters can warp "over time" rather than immediately (Dkt. 47 Ex. 3). Moylan's conclusion, however, does not state that the immersion heater warped immediately. Moreover, the manual does not clarify how long it would take to do so. Again, Defendant's challenge is without merit.

    c.    **<u>Stern Report</u>**

Elliot Stern, a mechanical engineer, prepared a report regarding the design and manufacture of Defendant's product (Dkt. 46 Ex. 4-5). Defendant submits that the report is not final because it states that "discovery in this case is continuing and that depositions and additional documents related to the issue addressed ... may be produced" (Dkt. 46 Ex. 4 at 3). Stern further indicated that he might supplement the report as additional information became available.

"Expert reports must not be sketchy, vague or preliminary in nature and the disclosures must not be used as a means to extend a discovery deadline." Dyett v. N. Broward Hosp. Dist., No. 03-60804-CIV, 2004 WL 5320630, at *1 (S.D. Fla. Jan. 21, 2004). Stern's mere assertion that he might supplement the report, however, does not make his report preliminary. Indeed, the Federal Rules provide for supplementation of an expert's report. See Fed. R. Civ. P. 26(a)(2)(D). Moreover,

his detailed report provides that his findings and opinions were "to a reasonable degree of engineering probability based on facts available and analysis performed at the time" (Dkt. 46 Ex. 4 at 12).

Defendant next argues that Stern's report is flawed because he identified twenty-seven items supporting his opinions, but some of the descriptions of these items are overbroad and some of the items were not produced in discovery. Defendant's concerns, however, were sufficiently addressed in the supplement (Dkt. 41 Ex. 3 at 8-9).

Finally, Defendant maintains that the report is conclusory because Stern did not provide scientific data or other information to support the conclusion that the immersion heater warped due to dry firing. Stern, however, pointed out that immersion heaters could exceed wet temperatures of 800 degrees Fahrenheit and dry temperatures of 1200 degrees Fahrenheit. He further noted that the water line depth at the time of the fire was approximately five inches, less than the displaced height of the immersion heater. Again, Defendant's challenge is without merit.

  **d.**  **Uffman Report**

Eric Uffman, Ph.D., a project leader with Chermir Analytical Services, prepared a report regarding whether fire retardant was present within a sample cut from a wash tank panel (Dkt. 47 Ex. 1-2). Defendant asserts that the report does not include: 1) Uffman's qualifications; and 2) a list of all other cases in which, during the previous four years, he testified as an expert at trial or by deposition. Plaintiffs concede these omissions but counter that they were cured by the supplement. Because Plaintiff is correct (Dkt. 41 Ex. 3 at 2-3), Defendant's challenge is without merit.

  **e.**  **Other Experts**

Defendant submits that several expert reports do not include any of the information required

by Rule 26. Plaintiffs point out that these are damages experts who were not retained or specially employed to provide expert testimony in this case. Consequently, Plaintiffs were not obligated to produce reports for these experts. See Fed. R. Civ. P. 26(a)(2)(B). Again, Defendant's challenge is without merit.

## III. Admissibility of Expert Testimony

Defendant argues that Plaintiffs' expert testimony is inadmissible under Fed. R. Evid. 702 because it is unreliable. Expert testimony is admissible if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

The expert reports appear to satisfy the standard set forth in Daubert v. Merrell Dow Pharm., 509 U.S. 579, 590 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999).[5] Nonetheless, because such matters are typically reserved for the District Judge's consideration at or near trial, Defendant's motion is denied without prejudice as to this issue.

Accordingly, and upon consideration, it is **ORDERED and ADJUDGED** that:

(1) Defendant's Motion to Strike Plaintiffs' Disclosure of Expert Testimony and to Exclude Plaintiffs' Expert Testimony at Trial (Dkt. 40) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on this 19th day of November, 2010.

---

[5] Although Defendant emphasizes a lack of testing by the experts, testing is but one of several factors that "might prove helpful in determining the reliability of a particular scientific 'theory or technique.'" Kumho Tire, 526 U.S. at 141 (quoting Daubert, 509 U.S. at 593-94); see Maiz v. Virani, 253 F.3d 641, 669 (11th Cir. 2001) (noting that an expert's report may be reliable despite an absence of verifiable testing or studies).

_____
ELIZABETH A JENKINS
United States Magistrate Judge